# EXHIBIT P

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### District of New Mexico

| | |
|---|---|
| In re Application of Chevron Corp. | ) |
| *Plaintiff* | ) |
| v. | ) |
| Richard Kamp and E-Tech International | ) |
| *Defendant* | ) |

Civil Action No.

(If the action is pending in another district, state where:                    )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Richard A. Kamp
### REDACTED

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Modrall Sperling<br>500 Fourth Street, N.W., Suite 1000<br>Albuquerque, NM  87102 | Date and Time:<br><br>08/30/2010 9:00 am |
|---|---|

The deposition will be recorded by this method:   stenographic means and video recording

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Exhibit A.  Documents responsive to the requests in Attachment A should be produced at the offices of Modrall Sperling, 500 Fourth Street, N.W., Suite 1000, Albuquerque, NM  87102, by 5:00 PM on August 26, 2010.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  8/16/10

*CLERK OF COURT*

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*       Chevron Corp.
_____ , who issues or requests this subpoena, are:

John Kelly,
Modrall Sperling, 500 Fourth Street, N.W., Albuquerque, NM  87102, ( 505) 848-1867, jkelly@modrall.com

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

    ❑ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

    ❑ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial. .

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A
## DEFINITIONS

### The following definitions apply both to the
### Documents To Be Produced and the Topics for Examination

1.      The phrase "1782 ACTIONS" shall mean and refer to legal proceedings filed by Chevron pursuant to 28 U.S.C. § 1782 seeking discovery RELATING TO the LAGO AGRIO LITIGATION, including without limitation the instant action, *Petitioner Chevron v. Respondents Stratus Consulting, Inc., et al.*, Case No. 10-cv00047-JLK (D. Col); *In re Application of Chevron Corporation*, Misc. No. 1:10-MI-0076 (N.D. Ga); *In re Application of Chevron Corporation*, Misc. No.4:10-MC-134 (S.D. Tex.); *In re Application of Chevron Corporation, et al.*, Misc. No. M-19-111; *In re Application of Chevron Corporation for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, No. 10-cv-2675 (SRC) (D. N.J.); *In re Application of Chevron Corporation*, No. 3:10-cv-01146-IEG-WMC (S.D.Cal.); *In re Application to Issue a Subpoena for the Taking of a Deposition and the Production of Documents*, No. 1:10-mc-00371-CKK (D.D.C.), and *Chevron v. Quarles*, 3:10-cv-00686 (MD Tenn.), and any later filed similar action.

2.      The term "3TM" shall mean and refer to 3TM Consulting, LLC and 3TM International, Inc., organized under the laws of the State of Texas, and includes 3TM's partners, executives, directors, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on 3TM's behalf, either directly or indirectly, whether as an employee or as an independent contractor.

3.      "And" includes the word "or" and vice-versa.

4.     "Any" includes the word "all" and vice-versa.

5.   The phrase "AUTHORSHIP" shall mean and refer to the PERSON or PERSONS that directly or indirectly CONTRIBUTE to the existence of a DOCUMENT.

6.     The phrase "CABRERA" shall mean and refer to Court-Appointed Expert Richard Stalin Cabrera Vega and any PERSON assisting him in the LAGO AGRIO LITIGATION, including without limitation any individual identified in Annex V to the Technical Summary Report, By: Engineer Richard Stalin Cabrera Vega, Expert For The Court Of Nueva Loja, Expert Opinion, dated March 24, 2008.

7.     The phrase "CABRERA REPORTS" shall mean and refer to the Technical Summary Report, By: Engineer Richard Stalin Cabrera Vega, Expert For The Court Of Nueva Loja, Expert Opinion, dated March 24, 2008, and the November 2008 Responses To The Plaintiffs' Questions Concerning The Expert Report, by Engineer Richard Stalin Cabrera Vega and any drafts, parts, sections, or annexes of the CABRERA REPORTS.

8.     The phrase "CABRERA WORKPLAN" shall mean and refer to the June 25, 2007 filing by CABRERA entitled Work Plan for Expert Determination and any drafts, parts, sections, or annexes of the CABRERA WORKPLAN.

9.     The term "COMMUNICATION(S)" shall mean the transmittal of any information by any method and includes all meetings, discussions, telephone conversations, contracts, letters, e-mails, memoranda, correspondence, reports, statements, consultations, negotiations, estimates, purchase orders and any DOCUMENT relating thereto.

10.     The phrase "CONTRIBUTED TO" or "CONTRIBUTING TO" or "CONTRIBUTION TO" shall mean and refer to the act of adding or contributing WORK, whether through drafting, revision, comments, suggestions, guidance or assistance of any kind.

11. The terms "DOCUMENT" or "DOCUMENTS" shall mean all communications in a tangible form, however produced, reproduced, or stored on any electronic media from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form (including servers, hard drives, jump drives, CDs, DVDs or any other storage device), and shall include, but shall not be limited to, the following: databases, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, papers, indices, letters, envelopes, telegrams, cables, telex messages, tabulations, work papers, timesheets, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, manuals, notes or summaries of telephone conversations or messages or other communications of any type, video recording, photographs, tape or other recordings, punch cards, discs, data cells, drums, printouts, and other data compilations from which information can be obtained, electronically-stored information, correspondence, teletype messages, electronic mail, instant messages, internal memoranda, agreements, diary entries, minute books, financial records, accounting records, income tax returns, ledgers, journals, audits, receipts, canceled checks, check stubs, drafts and other written, deeds, leases, mortgages, assignments, insurance policies, or other instruments related to real or personal property printed or typed matter, diagrams, plans, pictures, travel, entertainment, or expense records or reports or any other tangible thing that constitutes matter. The term "DOCUMENT" and "DOCUMENTS" shall also mean originals and exact copies or reproductions of all such written, printed, typed, recorded or graphic material or matter upon which notations or markings in writing, print or otherwise have been made which do not appear in the originals, and electronic files in native format with all associated data intact, including without limitation, system and imbedded metadata.

**ATTACHMENT A TO RICHARD KAMP SUBPOENA** **PAGE 3**

12. The term "EMA" shall mean and refer to the Ley de Gestion Ambiental, Codification 2004-019, also known as the Environmental Management Act.

13. The term "E-TECH" shall mean and refer to E-Tech International and includes E-TECH's partners, executives, directors, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on E-TECH's behalf, either directly or indirectly.

14. The phrase "E-TECH ARTICLES" shall mean and refer to articles or position papers prepared by E-TECH in support of or on behalf of any PLAINTIFF AFFILIATED PERSON.

15. The phrase "EXPERT TESTIMONY" shall mean and refer to the giving of oral or written expert opinion to a court.

16. As used herein, the term "FDA" shall mean and refer to the Frente de Defensa de la Amazonia, including FDA's members, partners, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on FDA's behalf, either directly or indirectly.

17. The phrase "GLOBAL EXPERT ASSESSMENT" shall mean and refer to WORK referred to in the Plaintiffs Request for Expert Appointment, filed by Alberto Wray and labeled as No. 4677, Case No. 002-2003, *Maria Aguinda y Otros v. Chevron Corporation*, Provincial Court of Justice of Sucumbíos in Nueva Loja, Ecuador, including, but not limited to the CABRERA WORKPLAN and CABRERA REPORTS.

18.   The phrase "GOVERNMENT OF ECUADOR" shall mean and refer to governing political body in Ecuador, including without limitation its officials, politicians, partners, contractors, employees, servants, representatives, agents, agencies, offices insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on the GOVERNMENT OF ECUADOR'S behalf, either directly or indirectly.

19.   The term "IDENTIFY," when used in reference to:

   a.      A person who is an individual, shall mean to state his or her name, current or last known employer, position, current or last known business or residence address (designating which), and business or residence telephone number (designating which);

   b.      A person that is a firm, partnership, corporation, proprietorship, association, or other organization or entity shall mean to state the full name and present or last known address and telephone number, the legal form of such entity or organization, and the identity of its chief executive officers; and

   c.      A DOCUMENT shall mean to state the date thereof and to identify the writer or originator of the DOCUMENT, any persons to whom it was sent, the subject matter dealt with in the DOCUMENT, the present location thereof, and the name(s) of the custodian(s) thereof.

20.   The phrase "LAGO AGRIO LITIGATION" shall mean and refer to the case of *Maria Aguinda y Otros v. Chevron Corporation,* currently pending in the Provincial Court of Justice of Sucumbíos in Nueva Loja, Ecuador.

21.     The phrase "March 3, 2007 MEETING" shall mean and refer to the March 3, 2007 meeting in Quito attended by CABRERA, and other PLAINTIFF AFFILIATED PEOPLE including, but not limited to Pablo Fajardo, Luis Yanza, Juan Pablo Saenz Mera, Anne Maest, Richard Kamp and Charles Champ.

22.     The phrase "March 4, 2007 MEETING" shall mean and refer to the March 4, 2007 meeting in Quito attended by Steven Donziger, Anne Maest, Richard Kamp and Charles Champ.

23.     The term "PERSON" shall mean any individual, corporation, organization, association, partnership, enterprise, limited partnership, limited liability company, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

24.     The phrase "PLAINTIFF AFFILIATED PERSON" or "PLAINTIFF AFFILIATED PEOPLE" shall mean and refer to any PERSON directly or indirectly assisting PLAINTIFFS in the LAGO AGRIO LITIGATION, including without limitation PLAINTIFFS' LAWYERS, PLAINTIFFS' JUDICIAL INSPECTION EXPERTS, FDA, SELVA VIVA, STRATUS, 3TM, UBR, Hydrosphere, Laura Belanger, Charles Champ, David Russell, Charles Calmbacher, Richard Clapp, E-TECH and the GOVERNMENT OF ECUADOR.

25.     The phrase "PLAINTIFFS" shall mean and refer to Alfredo Donaldo Payaguaje Payaguaje; Angel Justino Piaguaje Lucitante; Armando Wilfrido Piaguaje Payaguaje; Beatriz Mercedes Grefa Tanguila; Benancio Fredy Chimbo Grefa; Bertha Antonia Yumbo Tanguila; Carlos Grefa Huatatoca; Catalina Antonia Aguinda Salazar; Celia Irene Viveros Cusanga; Clide Ramiro Aguinda Aguinda; Daniel Carlos Lusitande Yaiguaje; Delfin Leonidas Payaguaje Payaguaje; Elias Roberto Piyaguaje Payahuaje; Emilio Martin Lusitande Yaiguaje; Esteban

Lusitande Yaiguaje; Fermin Piaguaje Payaguaje; Francisco Alvarado Yumbo; Francisco Matias

Alvarado Yumbo; Francisco Victor Tanguilla Grefa; Gloria Lucrecia Tanguila Grefa; Guillermo

Vicente Payaguaje Lusitante; Heleodoro Pataron Guaraca; Hugo Gerardo Camacho Naranjo;

Javier Piaguaje Payaguaje; Jose Gabriel Revelo Llore; Jose Miguel Ipiales Chicaiza; Lidia

Alexandra Aguinda Aguinda; Lorenzo Jose Alvarado Yumbo; Lourdes Beatriz Chimbo

Tanguila; Lucio Enrique Grefa Tanguila; Luis Agustin Payaguaje Piaguaje; Luis Armando

Chimbo Yumbo; Luisa Delia Tanguila Narvaez; Maria Aguinda Salazar; Maria Clelia Reascos

Revelo; Maria Hortencia Viveros Cusanga; Maria Magdalena Rodriguez Barcenes; Miguel

Mario Payaguaje Payaguaje; Narcisa Aida Tanguila Narvaez; Octavio Ismael Cordova Huanca;

Olga Gloria Grefa Cerda; Patricio Alberto Chimbo Yumbo; Patricio Wilson Aguinda Aguinda;

Reinaldo Lusitande Yaiguaje; Rosa Teresa Chimbo Tanguila; Segundo Angel Amanta Milan;

Simon Lusitande Yaiguaje; and Teodoro Gonzalo Piaguaje Payaguaje.

26.    The phrase "PLAINTIFFS' CONSULTANTS" shall mean and refer to any and all

people or organizations retained by any PLAINTIFF AFFILIATED PERSON for purposes

related to analysis of environmental harm, personal injury, remediation, compensation or other

disputed issues in the LAGO AGRIO LITIGATION.  The phrase includes STRATUS, E-TECH,

UBR, and 3TM.

27.    The phrase PLAINTIFFS' JUDICIAL INSPECTION EXPERTS shall mean and

refer to Charles Calmbacher, Jennifer Bilbao Garcia, Édison Camino Castro, Oscar Miguel

Davila Benitez, Orlando Manuel Felicita Na'to, Xavier Alonso Grandes Zambonino, Jose

Robalino Hidalgo, Amaury Mauricio Suarez Rivera, Luis Alberto Villacreces Carvajal,

Francisco Viteri Santamaria, and Fabian Alberto Mora Orozco.

28.    The phrase "PLAINTIFFS' LAWYERS" shall mean and refer to any lawyer, attorney or counselor, or PERSON acting on their behalf or assisting them, that has at any time represented or advised PLAINTIFFS in the LAGO AGRIO LITIGATION or the 1782 ACTIONS, or having a financial interest of any kind in the LAGO AGRIO LITIGATION or the 1782 ACTIONS.

29.    The terms "PROVIDE" or "PROVIDED" shall mean to provide, to procure, to render, to furnish, to make available, to get, or to supply what is desired or needed either directly or indirectly.

30.    The phrase "RELATED TO" and "RELATING TO" shall mean in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

31.    The phrase "SELVA VIVA" shall mean and refer to the Ecuador organization Selva Viva, and any parent, subsidiary, division, or successor entity.

32.    The phrase "SELVA VIVA DATABASE" shall mean and refer to a database prepared for SELVA VIVA or the FDA for use in the LAGO AGRIO LITIGATION containing digitized environmental and health information, including without limitation analytical sampling results, responses from individuals surveyed, contaminant limits and standards, site information, and sampling coordinates, including without limitation a Microsoft Access database titled "Base de datos de Selva Viva del Caso Aguinda v. Chevron Texaco".

33.    The term "STRATUS" shall mean and refer to Stratus Consulting, Inc. and includes STRATUS's partners, executives, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or

any other person or entity acting, or purporting to act, on STRATUS's behalf, either directly or indirectly.

34.    The term "UBR" shall mean and refer to Uhl, Baron, Rana & Associates, the environmental consulting company by that name with headquarters in Lambertville, New Jersey, and includes UBR's partners, executives, directors, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on UBR's behalf, either directly or indirectly, whether as an employee or as an independent contractor.

35.    The phrase "WORK" shall mean and refer to any writing, analysis, study, report, research, investigation, examination, supervision, guidance, advising, opinion, ideas, calculation, inference, deduction, assumption, conclusion, technique, testing, sampling, or measuring, including any fieldwork, RELATING TO the LAGO AGRIO LITIGATION.

36.    The phrase "YOU" or "YOUR" shall mean and includes yourself and all persons acting in your interest or on your instructions or assisting you, including without limitation your agents, servants, and representatives, including attorneys, accountants, investigators, advisors, environmental consultants, contractors, and medical consultants.

## INSTRUCTIONS

The following instructions shall govern the response and production of DOCUMENTS:

1.    All DOCUMENTS responsive to these Document Requests are to be Bates-stamped, logged, or otherwise individually identified prior to any review for privilege.

2.    In the event that any DOCUMENT called for by these Document Requests is withheld on the basis of a claim of privilege, that DOCUMENT is to be identified in a privilege log as follows:  Bates number or range (or equivalent document identifier), author(s),

addressees(s), indicated or blind copy recipient(s), date, subject matter, number of pages,

attachments or appendices, all persons to whom distributed, shown or explained, the present

custodian, and the name and nature of the privilege asserted. Any responsive DOCUMENT

provided to any another person or entity prior to production for review for any privilege or

protection, or for any other reason, shall be clearly Bates labeled prior to being provided to such

person or entity. A log of all documents so provided shall be maintained and included with any

production.

3.      In the event that any DOCUMENT called for by these Document Requests has

been destroyed, discarded, otherwise disposed of, or no longer exists, that DOCUMENT is to be

identified as completely as possible, including, without limitation, the following information:

author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of

disposal, reason for disposal, PERSON authorizing the disposal, and the PERSON disposing of

the DOCUMENT and identify its last known location and the reason it is no longer in existence.

4.      In the event that any DOCUMENT called for by these Document Requests and

maintained electronically has been deleted from the system on which it was maintained, that

DOCUMENT is to be identified as completely as possible, including, without limitation, the

following information:  author(s), addressee(s), indicated or blind copy recipient(s), date, subject

matter, date of disposal, reason for disposal, PERSON authorizing the deletion, and the PERSON

deleting the DOCUMENT, and identify its last known location and the reason it is no longer in

existence. The system from which any such DOCUMENT was deleted shall be maintained in its

present state, without reformatting, overwriting, or otherwise impairing the ability to recover any

such DOCUMENT.

5.      In the event that any information is redacted from a DOCUMENT produced pursuant to these Document Requests, that information is to be identified and the basis upon which such information is redacted should be fully stated.

6.      In the event that multiple copies or versions of a DOCUMENT exist, produce all non-identical copies of the DOCUMENT, including any and all drafts of the DOCUMENT.

7.      Please produce the requested documents as they are kept or maintained in the usual or ordinary course of business.  At the time and place of production of the DOCUMENTS requested herein, the DOCUMENTS requested are to be produced in the same order as they are maintained in the ordinary course of business.

8.      Pursuant to Fed. R. Civ. P. 34(b)(1)(C), electronically stored information is to be produced in their native electronic form, with all system and imbedded metadata intact. DOCUMENTS shall not be converted to any other format, including without limitation, .pdf or .TIFF format, that in any way limits, destroys, modifies, or restricts system or imbedded metadata.

9.      For each DOCUMENT produced, identify the specific Document Request category to which it is responsive.

10.     For each DOCUMENT produced, identify the office and location where that DOCUMENT was kept prior to this proceeding.

11.     As used herein, the singular form of a word shall be interpreted to include the plural form and the plural form shall be interpreted to include the singular whenever appropriate in order to bring within the scope of this request any DOCUMENTS which might otherwise be considered to be beyond its scope.

## DOCUMENTS TO BE PRODUCED

1.      All DOCUMENTS RELATING TO the GLOBAL ENVIRONMENTAL ASSESSMENT, CABRERA, the CABRERA WORKPLAN, or the CABRERA REPORTS, and any COMMUNICATIONS RELATING TO such DOCUMENTS.

2.      To the extent not otherwise provided in response to Request No. 1, all DOCUMENTS RELATING TO any WORK by YOU or by any PLAINTIFF AFFILIATED PERSON CONTRIBUTING TO the GLOBAL ENVIRONMENTAL ASSESSMENT, the CABRERA WORKPLAN, or the CABRERA REPORTS, and any COMMUNICATIONS RELATING TO such DOCUMENTS.

3.      To the extent not otherwise provided in response to Request No. 1, all DOCUMENTS RELATING TO the appointment of CABRERA as a judicial inspection expert or the global damages expert in the LAGO AGRIO LITIGATION, and all COMMUNICATIONS RELATING TO such DOCUMENTS.

4.      To the extent not otherwise provided in response to Request No. 1, all COMMUNICATIONS between or among YOU and CABRERA or any PERSON that CONTRIBUTED TO the CABRERA REPORTS.

5.      To the extent not otherwise provided in response to Request No. 1, all DOCUMENTS, including but not limited to invoices, receipts, billing statements, and credit agreements, RELATED TO payment for WORK provided directly or indirectly to CABRERA, CONTRIBUTING TO the CABRERA WORKPLAN or CABRERA REPORTS, or that appears in whole or in part in the CABRERA WORKPLAN or CABRERA REPORTS.

6.     To the extent not otherwise provided in response to Request No. 1, all DOCUMENTS RELATING TO any effort to conceal or delay the discovery of the AUTHORSHIP of the CABRERA WORKPLAN or CABRERA REPORTS.

7.     All DOCUMENTS RELATING TO the March 3, 2007 MEETING, and all COMMUNICATIONS RELATING TO such DOCUMENTS.

8.     All DOCUMENTS RELATING TO the March 4, 2007 MEETING, and all COMMUNICATIONS RELATING TO such DOCUMENTS.

9.     All COMMUNICATIONS between YOU or ANY PLAINTIFF AFFILIATED PERSON and the GOVERNMENT OF ECUADOR or any ECUADORIAN OFFICIAL RELATING TO CABRERA, the CABRERA WORKPLAN, the CABRERA REPORTS, the LAGO AGRIO LITIGATION, the EMA, the CRIMINAL CASES, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

10.     All DOCUMENTS RELATING TO any WORK by YOU or by any PLAINTIFF AFFILIATED PERSON PROVIDED directly or indirectly to the GOVERNMENT OF ECUADOR, and all COMMUNICATIONS RELATING TO such DOCUMENTS.

11.     All DOCUMENTS RELATING TO the SELVA VIVA DATABASE, the E-TECH ARTICLES, or any EXPERT TESTIMONY by YOU in the LAGO AGRIO LITIGATION.

12.     All DOCUMENTS not filed with the court in the LAGO AGRIO LITIGATION RELATING TO PLAINTIFFS' JUDICIAL INSPECTION EXPERTS and any WORK by PLAINTIFFS' JUDICIAL INSPECTION EXPERTS, including all exhibits, annexes, attachments, and full or partial drafts of such WORK, whether or not reviewed or relied upon by said experts.

13.     All DOCUMENTS not filed with the court in the LAGO AGRIO LITIGATION RELATING TO the collection, handling, and analysis of any soil, water, or other sample collected by, for, or under the supervision of, or provided to CABRERA or PLAINTIFFS' JUDICIAL INSPECTION EXPERTS or any soil, water, or other sample RELATED TO WORK by CABRERA or PLAINTIFFS' JUDICIAL INSPECTION EXPERTS.

14.     All COMMUNICATIONS between YOU and any lawyer or attorney that represented or is representing any party in any of the 1782 ACTIONS RELATING TO the AUTHORSHIP of the CABRERA REPORTS, contact between any PLAINTIFF AFFILIATED PERSON and CABRERA, DOCUMENTS provided to CABRERA, or efforts to prevent discovery, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

15.     All DOCUMENTS RELATING TO websites, File Transfer Protocol sites, or similar sites or protocols used for the viewing, access, transfer, distribution, uploading, or downloading of DOCUMENTS RELATING TO the LAGO AGRIO LITIGATION, all DOCUMENTS that IDENTIFY any PERSON that viewed, accessed, transferred, distributed, uploaded, or downloaded any DOCUMENTS from any such sites, and all DOCUMENTS that IDENTIFY any DOCUMENT that was viewed, accessed, transferred, distributed, uploaded, or downloaded from any such sites.

16.     All DOCUMENTS relating to the translation (from English to Spanish or Spanish to English) of any DOCUMENT responsive to this subpoena.

100916012_2.DOC

# E-TECH SUBPOENA

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

| | |
|---|---|
| In re Application of Chevron Corp. | ) |
| *Plaintiff* | ) |
| v. | ) |
| Richard Kamp and E-Tech International | ) |
| *Defendant* | ) |

Civil Action No.

(If the action is pending in another district, state where:

                                                                    )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  E-Tech International, C/O PATRICIA GAY-WEB – REGISTERED AGENT & VP
      21 Ladera Road, Santa Fe, New Mexico 87508-8260

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Modrall Sperling<br>        500 Fourth Street, N.W., Suite 1000<br>        Albuquerque, NM  87102 | Date and Time:<br><br>        08/30/2010 9:00 am |
|---|---|

The deposition will be recorded by this method:   stenographic means and video recording

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Exhibit A. Documents responsive to the requests in Attachment A should be produced at the offices of Modrall Sperling, 500 Fourth Street, N.W., Suite 1000, Albuquerque, NM  87102, by 5:00 PM on August 26, 2010.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  8/16/10

           *CLERK OF COURT*

                                                        OR

_____                    _____
     *Signature of Clerk or Deputy Clerk*                            *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*        Chevron Corp.
_____ , who issues or requests this subpoena, are:

John Kelly,
Modrall Sperling, 500 Fourth Street, N.W., Suite 1000, Albuquerque, NM  87102, ( 505) 848-1867, jkelly@modrall.com

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A
### DEFINITIONS

The following definitions apply both to the
Documents To Be Produced and the Topics for Examination

1.    The phrase "1782 ACTIONS" shall mean and refer to legal proceedings filed by Chevron pursuant to 28 U.S.C. § 1782 seeking discovery RELATING TO the LAGO AGRIO LITIGATION, including without limitation the instant action, *Petitioner Chevron v. Respondents Stratus Consulting, Inc., et al.*, Case No. 10-cv00047-JLK (D. Col); *In re Application of Chevron Corporation*, Misc. No. 1:10-MI-0076 (N.D. Ga); *In re Application of Chevron Corporation*, Misc. No.4:10-MC-134 (S.D. Tex.); *In re Application of Chevron Corporation, et al.*, Misc. No. M-19-111; *In re Application of Chevron Corporation for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, No. 10-cv-2675 (SRC) (D. N.J.); *In re Application of Chevron Corporation*, No. 3:10-cv-01146-IEG-WMC (S.D.Cal.); *In re Application to Issue a Subpoena for the Taking of a Deposition and the Production of Documents*, No. 1:10-mc-00371-CKK (D.D.C.), and *Chevron v. Quarles*, 3:10-cv-00686 (MD Tenn.), and any later filed similar action.

2.    The term "3TM" shall mean and refer to 3TM Consulting, LLC and 3TM International, Inc., organized under the laws of the State of Texas, and includes 3TM's partners, executives, directors, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on 3TM's behalf, either directly or indirectly, whether as an employee or as an independent contractor.

3.    "And" includes the word "or" and vice-versa.

4.    "Any" includes the word "all" and vice-versa.

5.   The phrase "AUTHORSHIP" shall mean and refer to the PERSON or PERSONS that directly or indirectly CONTRIBUTE to the existence of a DOCUMENT.

6.   The phrase "CABRERA" shall mean and refer to Court-Appointed Expert Richard Stalin Cabrera Vega and any PERSON assisting him in the LAGO AGRIO LITIGATION, including without limitation any individual identified in Annex V to the Technical Summary Report, By: Engineer Richard Stalin Cabrera Vega, Expert For The Court Of Nueva Loja, Expert Opinion, dated March 24, 2008.

7.   The phrase "CABRERA REPORTS" shall mean and refer to the Technical Summary Report, By: Engineer Richard Stalin Cabrera Vega, Expert For The Court Of Nueva Loja, Expert Opinion, dated March 24, 2008, and the November 2008 Responses To The Plaintiffs' Questions Concerning The Expert Report, by Engineer Richard Stalin Cabrera Vega and any drafts, parts, sections, or annexes of the CABRERA REPORTS.

8.   The phrase "CABRERA WORKPLAN" shall mean and refer to the June 25, 2007 filing by CABRERA entitled Work Plan for Expert Determination and any drafts, parts, sections, or annexes of the CABRERA WORKPLAN.

9.   The term "COMMUNICATION(S)" shall mean the transmittal of any information by any method and includes all meetings, discussions, telephone conversations, contracts, letters, e-mails, memoranda, correspondence, reports, statements, consultations, negotiations, estimates, purchase orders and any DOCUMENT relating thereto.

10.   The phrase "CONTRIBUTED TO" or "CONTRIBUTING TO" or "CONTRIBUTION TO" shall mean and refer to the act of adding or contributing WORK, whether through drafting, revision, comments, suggestions, guidance or assistance of any kind.

11.    The terms "DOCUMENT" or "DOCUMENTS" shall mean all communications in a tangible form, however produced, reproduced, or stored on any electronic media from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form (including servers, hard drives, jump drives, CDs, DVDs or any other storage device), and shall include, but shall not be limited to, the following:  databases, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, papers, indices, letters, envelopes, telegrams, cables, telex messages, tabulations, work papers, timesheets, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, manuals, notes or summaries of telephone conversations or messages or other communications of any type, video recording, photographs, tape or other recordings, punch cards, discs, data cells, drums, printouts, and other data compilations from which information can be obtained, electronically-stored information, correspondence, teletype messages, electronic mail, instant messages, internal memoranda, agreements, diary entries, minute books, financial records, accounting records, income tax returns, ledgers, journals, audits, receipts, canceled checks, check stubs, drafts and other written, deeds, leases, mortgages, assignments, insurance policies, or other instruments related to real or personal property printed or typed matter, diagrams, plans, pictures, travel, entertainment, or expense records or reports or any other tangible thing that constitutes matter.  The term "DOCUMENT" and "DOCUMENTS" shall also mean originals and exact copies or reproductions of all such written, printed, typed, recorded or graphic material or matter upon which notations or markings in writing, print or otherwise have been made which do not appear in the originals, and electronic files in native format with all associated data intact, including without limitation, system and imbedded metadata.

12.     The term "EMA" shall mean and refer to the Ley de Gestion Ambiental, Codification 2004-019, also known as the Environmental Management Act.

13.     The term "E-TECH" shall mean and refer to E-Tech International and includes E-TECH's partners, executives, directors, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on E-TECH's behalf, either directly or indirectly.

14.     The phrase "E-TECH ARTICLES" shall mean and refer to articles or position papers prepared by E-TECH in support of or on behalf of any PLAINTIFF AFFILIATED PERSON.

15.     The phrase "EXPERT TESTIMONY" shall mean and refer to the giving of oral or written expert opinion to a court.

16.     As used herein, the term "FDA" shall mean and refer to the Frente de Defensa de la Amazonia, including FDA's members, partners, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on FDA's behalf, either directly or indirectly.

17.     The phrase "GLOBAL EXPERT ASSESSMENT" shall mean and refer to WORK referred to in the Plaintiffs Request for Expert Appointment, filed by Alberto Wray and labeled as No. 4677, Case No. 002-2003, *Maria Aguinda y Otros v. Chevron Corporation*, Provincial Court of Justice of Sucumbíos in Nueva Loja, Ecuador, including, but not limited to the CABRERA WORKPLAN and CABRERA REPORTS.

18.     The phrase "GOVERNMENT OF ECUADOR" shall mean and refer to governing political body in Ecuador, including without limitation its officials, politicians, partners, contractors, employees, servants, representatives, agents, agencies, offices insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on the GOVERNMENT OF ECUADOR'S behalf, either directly or indirectly.

19.     The term "IDENTIFY," when used in reference to:

a.      A person who is an individual, shall mean to state his or her name, current or last known employer, position, current or last known business or residence address (designating which), and business or residence telephone number (designating which);

b.      A person that is a firm, partnership, corporation, proprietorship, association, or other organization or entity shall mean to state the full name and present or last known address and telephone number, the legal form of such entity or organization, and the identity of its chief executive officers; and

c.      A DOCUMENT shall mean to state the date thereof and to identify the writer or originator of the DOCUMENT, any persons to whom it was sent, the subject matter dealt with in the DOCUMENT, the present location thereof, and the name(s) of the custodian(s) thereof.

20.     The phrase "LAGO AGRIO LITIGATION" shall mean and refer to the case of *Maria Aguinda y Otros v. Chevron Corporation,* currently pending in the Provincial Court of Justice of Sucumbíos in Nueva Loja, Ecuador.

21.    The phrase "March 3, 2007 MEETING" shall mean and refer to the March 3, 2007 meeting in Quito attended by CABRERA, and other PLAINTIFF AFFILIATED PEOPLE including, but not limited to Pablo Fajardo, Luis Yanza, Juan Pablo Saenz Mera, Anne Maest, Richard Kamp and Charles Champ.

22.    The phrase "March 4, 2007 MEETING" shall mean and refer to the March 4, 2007 meeting in Quito attended by Steven Donziger, Anne Maest, Richard Kamp and Charles Champ.

23.    The term "PERSON" shall mean any individual, corporation, organization, association, partnership, enterprise, limited partnership, limited liability company, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

24.    The phrase "PLAINTIFF AFFILIATED PERSON" or "PLAINTIFF AFFILIATED PEOPLE" shall mean and refer to any PERSON directly or indirectly assisting PLAINTIFFS in the LAGO AGRIO LITIGATION, including without limitation PLAINTIFFS' LAWYERS, PLAINTIFFS' JUDICIAL INSPECTION EXPERTS, FDA, SELVA VIVA, STRATUS, 3TM, UBR, Hydrosphere, Laura Belanger, Charles Champ, David Russell, Charles Calmbacher, Richard Clapp, E-TECH and the GOVERNMENT OF ECUADOR.

25.    The phrase "PLAINTIFFS" shall mean and refer to Alfredo Donaldo Payaguaje Payaguaje; Angel Justino Piaguaje Lucitante; Armando Wilfrido Piaguaje Payaguaje; Beatriz Mercedes Grefa Tanguila; Benancio Fredy Chimbo Grefa; Bertha Antonia Yumbo Tanguila; Carlos Grefa Huatatoca; Catalina Antonia Aguinda Salazar; Celia Irene Viveros Cusanga; Clide Ramiro Aguinda Aguinda; Daniel Carlos Lusitande Yaiguaje; Delfin Leonidas Payaguaje Payaguaje; Elias Roberto Piyaguaje Payahuaje; Emilio Martin Lusitande Yaiguaje; Esteban

Lusitande Yaiguaje; Fermin Piaguaje Payaguaje; Francisco Alvarado Yumbo; Francisco Matias
Alvarado Yumbo; Francisco Victor Tanguilla Grefa; Gloria Lucrecia Tanguila Grefa; Guillermo
Vicente Payaguaje Lusitante; Heleodoro Pataron Guaraca; Hugo Gerardo Camacho Naranjo;
Javier Piaguaje Payaguaje; Jose Gabriel Revelo Llore; Jose Miguel Ipiales Chicaiza; Lidia
Alexandra Aguinda Aguinda; Lorenzo Jose Alvarado Yumbo; Lourdes Beatriz Chimbo
Tanguila; Lucio Enrique Grefa Tanguila; Luis Agustin Payaguaje Piaguaje; Luis Armando
Chimbo Yumbo; Luisa Delia Tanguila Narvaez; Maria Aguinda Salazar; Maria Clelia Reascos
Revelo; Maria Hortencia Viveros Cusanga; Maria Magdalena Rodriguez Barcenes; Miguel
Mario Payaguaje Payaguaje; Narcisa Aida Tanguila Narvaez; Octavio Ismael Cordova Huanca;
Olga Gloria Grefa Cerda; Patricio Alberto Chimbo Yumbo; Patricio Wilson Aguinda Aguinda;
Reinaldo Lusitande Yaiguaje; Rosa Teresa Chimbo Tanguila; Segundo Angel Amanta Milan;
Simon Lusitande Yaiguaje; and Teodoro Gonzalo Piaguaje Payaguaje.

26.     The phrase "PLAINTIFFS' CONSULTANTS" shall mean and refer to any and all
people or organizations retained by any PLAINTIFF AFFILIATED PERSON for purposes
related to analysis of environmental harm, personal injury, remediation, compensation or other
disputed issues in the LAGO AGRIO LITIGATION.  The phrase includes STRATUS, E-TECH,
UBR, and 3TM.

27.     The phrase PLAINTIFFS' JUDICIAL INSPECTION EXPERTS shall mean and
refer to Charles Calmbacher, Jennifer Bilbao Garcia, Édison Camino Castro, Oscar Miguel
Davila Benitez, Orlando Manuel Felicita Nato, Xavier Alonso Grandes Zambonino, Jose
Robalino Hidalgo, Amaury Mauricio Suarez Rivera, Luis Alberto Villacreces Carvajal,
Francisco Viteri Santamaria, and Fabian Alberto Mora Orozco.

28.     The phrase "PLAINTIFFS' LAWYERS" shall mean and refer to any lawyer, attorney or counselor, or PERSON acting on their behalf or assisting them, that has at any time represented or advised PLAINTIFFS in the LAGO AGRIO LITIGATION or the 1782 ACTIONS, or having a financial interest of any kind in the LAGO AGRIO LITIGATION or the 1782 ACTIONS.

29.     The terms "PROVIDE" or "PROVIDED" shall mean to provide, to procure, to render, to furnish, to make available, to get, or to supply what is desired or needed either directly or indirectly.

30.     The phrase "RELATED TO" and "RELATING TO" shall mean in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

31.     The phrase "SELVA VIVA" shall mean and refer to the Ecuador organization Selva Viva, and any parent, subsidiary, division, or successor entity.

32.     The phrase "SELVA VIVA DATABASE" shall mean and refer to a database prepared for SELVA VIVA or the FDA for use in the LAGO AGRIO LITIGATION containing digitized environmental and health information, including without limitation analytical sampling results, responses from individuals surveyed, contaminant limits and standards, site information, and sampling coordinates, including without limitation a Microsoft Access database titled "Base de datos de Selva Viva del Caso Aguinda v. Chevron Texaco".

33.     The term "STRATUS" shall mean and refer to Stratus Consulting, Inc. and includes STRATUS's partners, executives, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or

any other person or entity acting, or purporting to act, on STRATUS's behalf, either directly or indirectly.

34. The term "UBR" shall mean and refer to Uhl, Baron, Rana & Associates, the environmental consulting company by that name with headquarters in Lambertville, New Jersey, and includes UBR's partners, executives, directors, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on UBR's behalf, either directly or indirectly, whether as an employee or as an independent contractor.

35. The phrase "WORK" shall mean and refer to any writing, analysis, study, report, research, investigation, examination, supervision, guidance, advising, opinion, ideas, calculation, inference, deduction, assumption, conclusion, technique, testing, sampling, or measuring, including any fieldwork, RELATING TO the LAGO AGRIO LITIGATION.

## INSTRUCTIONS

The following instructions shall govern the response and production of DOCUMENTS:

1. All DOCUMENTS responsive to these Document Requests are to be Bates-stamped, logged, or otherwise individually identified prior to any review for privilege.

2. In the event that any DOCUMENT called for by these Document Requests is withheld on the basis of a claim of privilege, that DOCUMENT is to be identified in a privilege log as follows: Bates number or range (or equivalent document identifier), author(s), addressees(s), indicated or blind copy recipient(s), date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, the present custodian, and the name and nature of the privilege asserted. Any responsive DOCUMENT provided to any another person or entity prior to production for review for any privilege or

protection, or for any other reason, shall be clearly Bates labeled prior to being provided to such person or entity. A log of all documents so provided shall be maintained and included with any production.

3.      In the event that any DOCUMENT called for by these Document Requests has been destroyed, discarded, otherwise disposed of, or no longer exists, that DOCUMENT is to be identified as completely as possible, including, without limitation, the following information: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, PERSON authorizing the disposal, and the PERSON disposing of the DOCUMENT and identify its last known location and the reason it is no longer in existence.

4.      In the event that any DOCUMENT called for by these Document Requests and maintained electronically has been deleted from the system on which it was maintained, that DOCUMENT is to be identified as completely as possible, including, without limitation, the following information: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, PERSON authorizing the deletion, and the PERSON deleting the DOCUMENT, and identify its last known location and the reason it is no longer in existence. The system from which any such DOCUMENT was deleted shall be maintained in its present state, without reformatting, overwriting, or otherwise impairing the ability to recover any such DOCUMENT.

5.      In the event that any information is redacted from a DOCUMENT produced pursuant to these Document Requests, that information is to be identified and the basis upon which such information is redacted should be fully stated.

6.      In the event that multiple copies or versions of a DOCUMENT exist, produce all non-identical copies of the DOCUMENT, including any and all drafts of the DOCUMENT.

7.      Please produce the requested documents as they are kept or maintained in the usual or ordinary course of business. At the time and place of production of the DOCUMENTS requested herein, the DOCUMENTS requested are to be produced in the same order as they are maintained in the ordinary course of business.

8.      Pursuant to Fed. R. Civ. P. 34(b)(1)(C), electronically stored information is to be produced in their native electronic form, with all system and imbedded metadata intact. DOCUMENTS shall not be converted to any other format, including without limitation, .pdf or .TIFF format, that in any way limits, destroys, modifies, or restricts system or imbedded metadata.

9.      For each DOCUMENT produced, identify the specific Document Request category to which it is responsive.

10.     For each DOCUMENT produced, identify the office and location where that DOCUMENT was kept prior to this proceeding.

11.     As used herein, the singular form of a word shall be interpreted to include the plural form and the plural form shall be interpreted to include the singular whenever appropriate in order to bring within the scope of this request any DOCUMENTS which might otherwise be considered to be beyond its scope.

## DOCUMENTS TO BE PRODUCED

1.      All DOCUMENTS RELATING TO the GLOBAL ENVIRONMENTAL ASSESSMENT, CABRERA, the CABRERA WORKPLAN, or the CABRERA REPORTS, and any COMMUNICATIONS RELATING TO such DOCUMENTS.

2.      To the extent not otherwise provided in response to Request No. 1, all DOCUMENTS RELATING TO any WORK by E-TECH or by any PLAINTIFF AFFILIATED

PERSON CONTRIBUTING TO the GLOBAL ENVIRONMENTAL ASSESSMENT, the CABRERA WORKPLAN, or the CABRERA REPORTS, and any COMMUNICATIONS RELATING TO such DOCUMENTS.

3.      To the extent not otherwise provided in response to Request No. 1, all DOCUMENTS RELATING TO the appointment of CABRERA as a judicial inspection expert or the global damages expert in the LAGO AGRIO LITIGATION, and all COMMUNICATIONS RELATING TO such DOCUMENTS.

4.      To the extent not otherwise provided in response to Request No. 1, all COMMUNICATIONS between or among E-TECH and CABRERA or E-TECH and any PERSON that CONTRIBUTED TO the CABRERA REPORTS.

5.      To the extent not otherwise provided in response to Request No. 1, all DOCUMENTS, including but not limited to invoices, receipts, billing statements, and credit agreements, RELATED TO payment for WORK provided directly or indirectly to CABRERA, CONTRIBUTING TO the CABRERA WORKPLAN or CABRERA REPORTS, or that appears in whole or in part in the CABRERA WORKPLAN or CABRERA REPORTS.

6.      To the extent not otherwise provided in response to Request No. 1, all DOCUMENTS RELATING TO any effort to conceal or delay the discovery of the AUTHORSHIP of the CABRERA WORKPLAN or CABRERA REPORTS.

7.      All DOCUMENTS RELATING TO the March 3, 2007 MEETING, and all COMMUNICATIONS RELATING TO such DOCUMENTS.

8.      All DOCUMENTS RELATING TO the March 4, 2007 MEETING, and all COMMUNICATIONS RELATING TO such DOCUMENTS.

9. All COMMUNICATIONS between E-TECH or ANY PLAINTIFF AFFILIATED PERSON and the GOVERNMENT OF ECUADOR or any ECUADORIAN OFFICIAL RELATING TO CABRERA, the CABRERA WORKPLAN, the CABRERA REPORTS, the LAGO AGRIO LITIGATION, the EMA, the CRIMINAL CASES, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

10. All DOCUMENTS RELATING TO any WORK by E-TECH or by any PLAINTIFF AFFILIATED PERSON PROVIDED directly or indirectly to the GOVERNMENT OF ECUADOR, and all COMMUNICATIONS RELATING TO such DOCUMENTS.

11. All DOCUMENTS RELATING TO the SELVA VIVA DATABASE, the E-TECH ARTICLES, or any EXPERT TESTIMONY by E-TECH in the LAGO AGRIO LITIGATION.

12. All DOCUMENTS not filed with the court in the LAGO AGRIO LITIGATION RELATING TO PLAINTIFFS' JUDICIAL INSPECTION EXPERTS and any WORK by PLAINTIFFS' JUDICIAL INSPECTION EXPERTS, including all exhibits, annexes, attachments, and full or partial drafts of such WORK, whether or not reviewed or relied upon by said experts.

13. All DOCUMENTS not filed with the court in the LAGO AGRIO LITIGATION RELATING TO the collection, handling, and analysis of any soil, water, or other sample collected by, for, or under the supervision of, or provided to CABRERA or PLAINTIFFS' JUDICIAL INSPECTION EXPERTS or any soil, water, or other sample RELATED TO WORK by CABRERA or PLAINTIFFS' JUDICIAL INSPECTION EXPERTS.

14. All COMMUNICATIONS between E-TECH and any lawyer or attorney that represented or is representing any party in any of the 1782 ACTIONS RELATING TO the

AUTHORSHIP of the CABRERA REPORTS, contact between any PLAINTIFF AFFILIATED

PERSON and CABRERA, DOCUMENTS provided to CABRERA, or efforts to prevent

discovery, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

15.     All DOCUMENTS RELATING TO websites, File Transfer Protocol sites, or

similar sites or protocols used for the viewing, access, transfer, distribution, uploading, or

downloading of DOCUMENTS RELATING TO the LAGO AGRIO LITIGATION, all

DOCUMENTS that IDENTIFY any PERSON that viewed, accessed, transferred, distributed,

uploaded, or downloaded any DOCUMENTS from any such sites, and all DOCUMENTS that

IDENTIFY any DOCUMENT that was viewed, accessed, transferred, distributed, uploaded, or

downloaded from any such sites.

16.     All DOCUMENTS relating to the translation (from English to Spanish or Spanish

to English) of any DOCUMENT responsive to this subpoena.

## TOPICS FOR EXAMINATION

1.     WORK by E-TECH RELATING TO the GLOBAL EXPERT ASSESSMENT,

CONTRIBUTING TO the CABRERA WORKPLAN or CABRERA REPORTS, PROVIDED to

CABRERA, or appearing in the CABRERA WORKPLAN or CABRERA REPORTS.

2.     COMMUNICATION between E-TECH and any PLAINTIFF AFFILIATED

PERSON RELATING TO the GLOBAL EXPERT ASSESSMENT, the CABRERA

WORKPLAN, or CABRERA REPORTS.

3.     The identity of any PLAINTIFF AFFILIATED PERSON that CONTRIBUTED

TO the GLOBAL EXPERT ASSESSMENT, the CABRERA WORKPLAN, or CABRERA

REPORTS.

4.    COMMUNICATION between E-TECH or PLAINTIFF AFFILIATED PERSONS and CABRERA.

5.    The March 3, 2007 MEETING.

6.    The March 4, 2007 MEETING.

7.    COMMUNICATION between E-TECH and any PLAINTIFF AFFILIATED PERSON RELATING TO this subpoena or to any other subpoena RELATING TO the LAGO AGRIO LITIGATION or any 1782 ACTIONS.

8.    E-TECH policies and procedures RELATING TO retention and destruction of records by E-TECH RELATING TO the LAGO AGRIO LITIGATION, including electronic records and backup tapes, discs, drives or files.

9.    Compensation of E-TECH RELATING TO the LAGO AGRIO LITIGATION.

100916117_2 (CVX 1782 - E-Tech Subpoena (N.M. filing)) (7).DOC