IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHEVRON CORPORATION,

        Petitioner,                          CIVIL NO.  10-MC-21JH/LFG

To Issue Subpoenas For the
Taking of Depositions and the
Production of Documents.

<u>Consolidated with</u>

In Re Application of
RODRIGO PÉREZ PALLARES,
an Eduadorian citizen, and
RICARDO REIS VEIGA,
an American citizen,

        Petitioners.                         CIVIL NO.  10-MC-22 JH/LFG

for an Order to Conduct Discovery
for Use in Foreign Proceedings.

**<u>MEMORANDUM OPINION AND ORDER</u>**
**<u>AUTHORIZING DISCOVERY</u>**[1]

      THIS MATTER is before the Court on consolidated Applications by Chevron Corporation, Rodrigo Pérez Pallares and Ricardo Reis Veiga ("Applicants") for an order authorizing discovery pursuant to 28 U.S.C. § 1782.

      Applicants seek to obtain discovery from individuals who reside in or may be found within the District of New Mexico for use in legal proceedings pending before foreign tribunals in Ecuador and the Netherlands.  Specifically, Applicants wish to take depositions and obtain document production from Respondents Richard A. Kamp ("Kamp"), a New Mexico resident, and E-Tech International ("E-Tech"), a corporation with its principal place of business within this judicial

---

[1] This matter was referred to the undersigned Magistrate Judge [Doc. 53] for disposition, as it relates to a discovery dispute.

district. Applicants contend that the discovery from Respondents is relevant to the claims and defenses pending before the foreign tribunals, and seek to take discovery that would be helpful to such tribunals.[2]

The Court considered the Applications, Kamp and E-Tech's ("Respondents") Response [Doc. 60], the Replies [Docs. 70, 72] and the documents submitted in support and opposition to the requests, and determines that oral argument is not necessary.

## **Factual and Procedural Background**

In 2003, a lawsuit was filed in the Republic of Ecuador seeking damages from Chevron for environmental damages allegedly caused by its oil exploration and drilling activities. The lawsuit is captioned <u>Maria Aguinda y Otros v. Chevron Corporation</u> and is generally referred to as the "Lago Agrio Litigation." That case is currently pending in the Superior Court of Nueva Loja, Ecuador. Also pending in Ecuadorian courts are criminal proceedings brought against Pérez and Veiga, Respondents in this case, arising from their work as attorneys for a subsidiary of Chevron.

The other foreign proceeding at issue in connection with Applicants' request for discovery is a international arbitration brought in September 2009 in the Hague, Netherlands, by Chevron under the Bilateral Investment Treaty between the United States and Ecuador. That case, captioned <u>Chevron Corporation and Texaco Petroleum Corporation v. The Republic of Ecuador</u>, arises from the Lago Agrio Litigation.

In the Lago Agrio Litigation, the Ecuadorian court ordered a global assessment of environmental damages to be conducted by a team of expert witnesses, but thereafter substituted a sole expert, Richard Cabrera-Vega ("Cabrera"), as Special Master for that purpose. Cabrera issued

---

[2]Richard Kamp's website states in part, "Kamp worked with E-Tech staff on assessing Chevron-Texaco oil dumping environmental impacts in Ecuador . . . ." Indeed, it was Richard A. Kamp's and E-Tech International's work that serves as the basis for the discovery requests. *See also*, Doc. 13, Ex. M.

a voluminous Special Master's report assessing damages against Chevron in the amount of 27 billion dollars. Subsequent to issuance of the report, Applicants discovered evidence supporting claims of corruption of the judicial process, fraud, attorney collusion with the Special Master, inappropriate *ex parte* communications with the court, and fabrication of reports and evidence. This newly discovered evidence concerns information created by the Lago Agrio plaintiffs' lawyers themselves.

In 2005, Steven Donziger, one of the lead attorneys for the Lago Agrio plaintiffs, solicited a film maker to create a real-time documentary relating to the litigation. The result was a film entitled "Crude," which concerned the planning, strategies, investigation, litigation, and outcome of the lawsuit. The filmmaker accumulated over 600 hours of raw film footage.

Upon learning of this footage, Applicants filed applications under 28 U.S.C. § 1782 in the Southern District of New York, seeking production of hundreds of hours of outtake footage. *See* In re Application of Chevron Corporation, ___ F. Supp. 2d ___, 2010 WL 1801526 (S.D.N.Y. May 10, 2010)(correcting opinion issued on May 6). The district court in the Southern District of New York ordered production of the outtakes and Respondents appealed. On July 15, 2010, the Second Circuit affirmed the production order. *See*, In re Application of Chevron Corporation, No. M-19-111, 2010 WL 2891202 (S.D.N.Y. July 20, 2010), at * 1.

The release of many hours of the outtakes has sent shockwaves through the nation's legal communities, primarily because the footage shows, with unflattering frankness, inappropriate, unethical and perhaps illegal conduct.[3] In the film itself, Attorney Donziger brags of his *ex parte*

---

[3]After being told by Kamp and E-Tech's chief scientist, Anne Maest ("Maest"), that there is no evidence of groundwater contamination except at the oil pits themselves, and certainly no evidence of extensive contamination, attorney Donziger stated, "Hold on a second, you know. This is Ecuador. Okay? You can say whatever you want and at the end of the day, there's a thousand people around the courthouse [and] you're going to get what you want." [Doc. 13, Ex. A, at 195-00-CLIP-05]. When pressed by Kamp, Maest, and another scientist about the absence of evidence, Donziger states, "And [it] really wouldn't matter that much . . . because at the end of the day, this is all for the court, just a bunch of smoke and mirrors and bullshit. It really is. We have enough to get money, to win." [Id.].

contacts with the Ecuadorian judge, confessing that he would never be allowed to do such things in the United States, but, in Ecuador, everyone plays dirty.[4] The outtakes support, in large part, Applicants' contentions of corruption in the judicial process. They show how non-governmental organizations, labor organizations, community groups and others were organized by the Lago Agrio attorneys to place pressure on the new Ecuadorian government to push for a specific outcome in the litigation, and how the Ecuadorian government intervened in ongoing litigation.

Chevron asserts that the outtakes reveal that Respondent Kamp, along with E-Tech's chief scientist Maest, were present at a meeting with Lago Agrio's counsel, their consultants and Cabrera to plan Cabrera's expert investigation and report; and the meeting was held weeks before Cabrera was appointed as the Lago Agrio Litigation Special Master [Doc. 2 at 3-4]. The footage shows one of the Lago Agrio Ecuadorian attorneys explaining that the Special Master's report will be prepared by Lago Agrio attorneys and their consultants, and not by the Special Master.[5]

The outtakes include a luncheon meeting with Kamp, E-Tech's chief scientist Maest, Charles Champ (another consultant) and Attorney Donziger. Kamp, Maest and Champ candidly state that the investigations show water contamination only at the pit sites and do not support an assertion of widespread groundwater contamination. [Doc. 13, Ex. A, at 195-00-CLIP-05].

Undeterred by the news that the investigation did not support claims of groundwater

---

[4]David Folkenflik, "A 'Crude' Awakening: Chevron vs. the Documentarian," All Things Considered, National Pubic Radio (June 4, 2010), audio clip at 2:05-2:15, available at http://www.npr.org/templates/story/story.php?storyId=127410188, as of August 31, 2010.

[5]Pablo Fajardo (Lago Agrio's Ecuadorian attorney) stated, "The plaintiffs' technical coordinator must be [involved] in the process full time. Accompany the expert in the field. In other words, we'll attach an attorney who will always be in the field to also protect the activity being performed. To provide facilities and necessary support to the field team. To support the expert in writing the report. And here is where we do want support of our entire technical team . . . of experts, scientists, attorneys, political scientists so that all will contribute to that report–*in other words, you see, the work isn't going to be the expert's*." [Doc. 13, Ex. A, at 191-00-CLIP-03].

contamination and the multi-billion dollar remediation costs that would naturally flow, Donziger tells Kamp and the chief scientist that they can "extrapolate" findings of contamination at the pits to other areas, on nothing more than a theory.  Id.  In other words, contamination of the pits could be "extrapolated" to areas with no documented contamination.  The admonition appears to have been effective, as the Cabrera Report now lists extensive water contamination and multi-billion dollars of remediation costs, allegedly caused by Chevron and Texaco's oil exploration activities.  [Doc. 17, Ex. Q].

Chevron alleges that the Cabrera Report is the sole "damage assessment" presented to the Ecuadorian court in the Lago Agrio Litigation.  In the Treaty Arbitration litigation in the Hague, Chevron contends that the Republic of Ecuador is colluding with the Lago Agrio plaintiffs to use the Cabrera Report to support a grossly improper damages award against Chevron, and to shift the Ecuadorian government's own environmental liability onto Chevron.

Meanwhile, Pérez, a citizen of Ecuador, and Veiga, a citizen of the United States, were served with a criminal Accusation in Ecuador.  They are attorneys and represented Texaco Petroleum Company ("TexPet"), now a subsidiary of Chevron, in negotiating with the Government of Ecuador and Ecuador's state-owned oil company a Final Release of TexPet with respect to any future claims for damage to the environment arising from its oil operations in Ecuador.  The criminal charges arise from allegations that the Final Release was executed based on a false certification that certain environmental remediation had been completed, when it fact it had not.  Pérez and Veiga contend that the criminal charges are unfounded, and that the prosecution was brought in bad faith in order to pressure Chevron to pay billions of dollars to settle the Lago Agrio Litigation.

## **Analysis**

Applicants in this matter are proceeding under 28 U.S.C. § 1782.  This statute provides

authority for a United States court to authorize discovery for use in a foreign tribunal, and it states in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a . . . request made by a foreign or international tribunal or upon the application of any interested person . . . . A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

Exigent circumstances occasioned by time deadlines imposed by the Ecuadorian court in the Lago Agrio Litigation compelled this Court to order expedited briefing on the requests for discovery under § 1782.

    A. <u>Expedited Briefing and Waiver of Objections</u>

Chevron's urgent need for discovery is based on its assertion that "[o]n August 2, 2010, the Ecuadorian court issued an order, at Plaintiffs' request, directing the parties to file by September 16, 2010, submissions 'setting forth and justifying their positions . . . with respect to the economic and applicable criteria for remediation of environmental damages' – topics that relate directly to the discovery here." [Doc. 2, at 4].

Pérez and Veiga's urgent need for discovery is based their assertion that they were served with a Criminal Accusation on June 17, 2010, and they need this discovery to aid in their defense. They state they face a preliminary hearing which may be set at any time, with as little as ten days' notice. [Doc. 70, at 5].

On August 20, 2010, this Court issued an Order to Show Cause [Doc. 50 in 10-MC-21, and Doc. 13 in 10-MC-22] directing Respondents to show cause why they should not be compelled to respond to discovery and, specifically, to state any objections they have to the proposed discovery.

6

Respondents were directed to show cause in writing prior to 5:00 p.m. on August 25, 2010, why an order should not be issued granting the Applications.[6] While the response was timely filed, the entirety of the response was directed at urging this Court to deny the Applications because a prior application was filed in the United States District Court for the Southern District of California, or to transfer these proceedings to the District Court in California, or to stay proceedings pending disposition of the California court's ruling.[7]

Inexplicably, while Respondents objected to the Applications, they failed to state any objection to the specific document requests or proposed discovery. The failure to object does not appear to be an oversight, as Respondents sought, without Court authorization, to preserve the right to file objections at a later date. Unfortunately, a party may not establish its own schedule to file objections. In this case, the Court gave Respondents a specific deadline for filing objections to the proposed discovery. That deadline lapsed and no objections were filed.

A party failing to assert objections to a discovery request in a timely and adequate fashion waives the right to bring those objections, even if the objections would have been sustained had they been brought correctly. Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984). *See also*, Wang v. Hsu, 919 F.2d 130 (10th Cir. 1990) (a party failing to lodge timely objections to a subpoena *duces tecum* similarly waives the right to object).

Respondents contend that they have not been given enough time to brief the underlying substantive issues as to propriety of the requested discovery. As noted above, instead of briefing these issues Respondents presented the argument, now moot, that the case should be transferred to

---

[6] At Respondents' request, the response time was extended to midnight on August 25, 2010.

[7] Respondents' argument for dismissal, transfer or stay were made moot when the district court in the Southern District of California court stayed its own proceedings so as to allow this Court to act on the Applications [Doc. 77].

7

the Southern District of California. In the alternative, they requested that this Court establish a longer briefing schedule. Respondents further state in their Response:

> If the Court permits the Chevron Applicants to issue their proposed subpoenas, Respondents and the Ecuadorian Plaintiffs reserve the right to raise all of their substantive arguments – including those based on the text of Section 1782, on the propriety of discovery under the U.S. Supreme Court's *Intel* factors, and on the applicability of any privilege – in the context of a motion to quash.

[Doc. 60, at 24 & n.9].

Respondents contend that Chevron "fabricated" a false urgency in this case and there is no reason to issue an expedited decision. Respondents say that they actually asked the Ecuadorian court to extend the time for the parties to submit new damage submissions. However, Chevron points out that the Lago Agrio plaintiffs filed a document on June 21, 2010 in which they request that the Ecuadorian court set a 30-day deadline for the parties to submit any final information about the Cabrera Report "to assure that this trial may proceed to conclusion without further delay and distraction resulting from Chevron's attacks in foreign [*i.e.*, United States] courts." [Doc. 71, at 5]. This language indicates that the Lago Agrio plaintiffs would resist any attempt by Applicants to submit evidence obtained in these §1782 proceedings after the short deadline.

Respondents also contend that the Ecuadorian court's August 2, 2010 order did not place any deadline on additional submissions concerning the Cabrera Report. However, Chevron points out that the Ecuadorian court ruled that, after the 45-day deadline established in its August 2 order, it would not consider "any other pleadings that the parties may submit."

The Court finds that the urgency is real, not only for Chevron but also for Applicants Pérez and Veiga, who face criminal charges related to their representation of a subsidiary of Chevron in the Ecuadorian courts. The Court agrees with Pérez and Veiga that they "face serious criminal charges that threaten their liberty and seek evidence here to demonstrate that these charges are

baseless. Their urgent need for this evidence is genuine." [Doc. 70, at 5].

In addition, it is apparent that Respondent E-Tech already filed extensive briefing in the proceedings in the Southern District of California, and that the Respondents' claim that they need more time to brief the issues is simply unbelievable. Unfortunately for Respondents, they chose to ignore the urgency of these proceedings and to use the time allotted by this Court to argue that the proceedings are more properly brought elsewhere. In so doing, they waived their right to present their substantive arguments to this Court.

B. Basis for Granting Discovery

By its own terms § 1782 authorizes a district court to grant an application where (1) the person from whom discovery is sought resides or is found in the district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or by "any interested person."

The Applications before the Court show compliance with § 1782 requirements. Specifically, it is undisputed that Respondents reside in or may be found within the District of New Mexico. Additionally, the discovery sought appears relevant to claims and defenses in the aforementioned extraterritorial proceedings in the Republic of Ecuador and the Hague, Netherlands. Finally, the Applications are made by interested persons, in that the Applicants are either parties or otherwise involved in the extraterritorial proceedings in the foreign tribunals. Thus, all statutory prerequisites are met.

In determining whether a court should exercise its discretion to permit discovery under § 1782, the Court considers the Supreme Court's analysis in Intel Corporation v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004). In the Intel case,September 1, 2010 the Supreme Court identified various discretionary factors to guide a district court's determination on whether to grant

9

a § 1782 application for discovery.

First, the Court should determine whether the material sought is within the foreign tribunal's jurisdictional reach. In this case, Respondents are not parties to the foreign tribunal proceedings. They reside in the United States within the District of New Mexico, and because all of the documents relevant to the proposed discovery are within the District of New Mexico, it is likely that Respondents and their documents would be outside the reach of the foreign tribunals. In other words, those tribunals would have no authority to compel Respondents to appear for depositions, nor would they have authority to issue orders requiring foreign non-parties to produce documents.

Secondly, <u>Intel</u> instructs that the District Court must determine the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government or court abroad to the United States federal court's assistance. In this case, there are three proceedings – one an international arbitration at the Hague, another the environmental damage proceeding in the Republic of Ecuador, and finally, the criminal prosecutions brought against Pérez and Veiga.

It would appear reasonable that these foreign tribunals would welcome the availability of evidence relevant to the prosecution and defense of claims in those respective tribunals. However, it is also clear that the Republic of Ecuador is a respondent in one proceeding, is accused in the other, at least by inference, of colluding with the Lago Agrio attorneys, and has initiated criminal proceedings against two of the Applicants herein. Thus, the Court cannot state that the Republic of Ecuador would specifically be receptive to the discovery of this information.

The third factor outlined by the Court in <u>Intel</u> is whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States. In this case, no one asserts that the Applicants are attempting to make an end run

around information-gathering restrictions imposed either by the arbitration panel in the Hague or by the Ecuadorian courts.

Finally, the Intel decision requires that the Court must determine whether the subpoena contains unduly intrusive or burdensome requests. In this case, it is clear that there will be a significant burden on Respondents to provide documents and appear for depositions on short notice. However, the documents being sought are contested by the Applicants in proceedings throughout the United States, and the issues relating to the production of documents have been briefed and argued.[8] Thus, the information sought is known to the Respondents, and the arguments and authorities relevant to the production have been discussed in multiple proceedings.

C. Conclusion

Given that Kamp and E-Tech scientist Maest were present at the meeting where the Special Master's report was discussed and planned, it is clear that Respondents have information that is relevant to prosecution or defense of the aforementioned extraterritorial proceedings. Further, to the extent there is a burden, the benefit of shining light on allegedly corrupt proceedings significantly outweighs the burden, cost or hardship imposed on the Respondents. It appears that Applicants are not seeking the information in bad faith and, because Respondents failed to state any substantive objections to the discovery requests, they have waived any objections.

The present request is not unique. Other applicants have filed similar requests in various United States courts, and those requests have been granted by the United States District Courts in Georgia, Colorado, Texas, New Jersey, California, New York and the District of Columbia.

---

[8]The same or similar requests were filed in various districts. Respondents state in their Response, "These proceedings, which now total eleven in number (a total that is certain to grow), are targeted at Plaintiffs' American and Ecuadorian lawyers and environmental experts for the purpose of uncovering the basis for the damages assessment expert report prepared by Mr. Cabrera." [Doc. 60, at 13].

**Order**

Having considered the Applications, responses and replies, and determining that all prerequisites under 28 U.S.C. § 1782 have been satisfied and the discretionary factors set forth in Intel Corporation, *supra*, demonstrate the propriety of discovery in this case; and, further, noting that Respondents' failure to file any objections to the requests constitutes waiver of any objections, the Court issues its order pursuant to 28 U.S.C. § 1782 authorizing Applicants to conduct the discovery sought for use in foreign proceedings; and further directs Respondents to answer outstanding discovery requests, to produce the documents sought in discovery requests, and to appear for depositions as required by Applicants.  Respondents are directed to comply with the requests set forth in the proposed subpoenas [Doc. 3, Ex. 13; and Doc. 13, Ex. P] without necessity for service of the subpoenas, with the exception that the date for disclosure is changed from August 30, 2010 to September 8, 2010.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge